UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 17-20773-WILLIAMS/Torres

SALLY JORDAN,

    *Plaintiff*,

vs.

CELEBRITY CRUISES, INC.,

    *Defendant*.

_____/

## DEFENDANT'S *DAUBERT* MOTION TO STRIKE PLAINTIFF'S EXPERT RANDALL JAQUES

Defendant, CELEBRITY CRUISES, INC., ("Celebrity") by and through undersigned counsel, and pursuant to *Daubert* and its progeny, Federal Rule of Evidence 702, Federal Rule of Civil Procedure 26, and the Local Rules for the Southern District of Florida, hereby moves this Honorable Court for an order striking Plaintiff's expert, Randall Jaques, and excluding his opinions at trial and pretrial, and as grounds states as follows:

### INTRODUCTION

This is a maritime action in which Plaintiff claims she was injured in an unwitnessed slip and fall on a bath mat[1] inside her stateroom bathroom on the Celebrity *Summit*. [DE 5, ¶ 4, 5, 8]. According to Plaintiff, at approximately 2:30 a.m., she turned on the bathroom light, looked down at the bathroom floor, and saw the bath mat. [See Deposition of Plaintiff attached as Exhibit A, at 89:1-4; 89:19-90:1; 98:5-15; 107:13-108:8]. She recognized the bath mat as similar to the bath mat she had used in the same bathroom when she had showered on two prior occasions. [Exhibit A, at 74:15-18; 15:3-4; 73:20-23; 77:11-12; 77:14-21; 96:14-24]. Plaintiff admitted she could have moved the bath mat before entering the bathroom, but instead chose to intentionally step on the bath mat with her left foot, at which point she slipped and fell. [Exhibit A, at 91:15—20; 100:23-25]. Plaintiff

---

[1] Plaintiff's Amended Complaint refers to the bath mat as a "mat/towel." [DE 6, ¶ 7(d)]. It is a small white towel similar to those utilized in countless hotels as a mat for one to step on outside a shower/bath. It will be referred to as a bath mat for purposes of this motion.

testified the configuration of the bathroom at the time of the incident is accurately depicted in the below photograph. [Exhibit A, at 93:15-94:12].



Plaintiff does not allege a foreign substance or liquid existed on the floor at the time of the alleged incident. [See generally, DE 5].

Plaintiff proffered Randall Jaques as an expert as to the cause of Plaintiff's fall, whether the bath mat was folded in compliance with Celebrity's policies, and whether the towel was a tripping or slipping hazard for passengers. [See Jaques March 12, 2018 report, and April 23, 2018 supplemental report, attached as composite Exhibit B]. Although Jaques holds himself out as a maritime safety expert on nearly every aspect of a cruise line's conduct, he holds no bachelor or advanced degrees in any field, and his work experience is limited to law enforcement and security duties, including jobs onboard vessels not associated with Celebrity. *Id.*

At a scene inspection Jaques conducted a patently unscientific and unreliable "test" of the slipperiness of the bath mat on the floor by pushing the towel around the floor with his hand. [*Id.* (for his description of his testing method)]. His opinions should be stricken because they fail the qualifications, reliability, and helpfulness tests set forth in *Daubert v. Merrell Dow Pharms., Inc.,* 409 U.s. 578, 589 (1993) and its progeny. Indeed, because of Jaques' lack of expert qualifications, unreliable methodologies and unhelpful conclusions his "expert" testimony in cruise ship accident cases is frequently stricken in total or severely limited. *See, e.g., Leroux v. NCL (Bahamas Ltd.,* No. 15-23-95-CIV WILLIAMS/SIMONTON, 2017 WL 2645755 (S.D.Fla. June 19, 2017); *Johnson Smith v. Norwegian Cruise Line,* 14-cv-23810-FAM [DE 59]; *Farley v. Oceania Cruises, Inc.,* 2015 WL 1131015 (S.D. Fla. Mar. 12, 2015); *Mendel v. Royal Caribbean Cruises Ltd.,* 2012 WL 2367853 (S.D. Fla. June 21, 2012); *Umana-Fowler v. NCL (Bahamas) Ltd.,* 2014 WL 4832297 (S.D.Fla. Sept. 19, 2014); *Johnson v.*

*Carnival Corp.,* 07-cv-20147-UU [DE 150]; *Burdeaux v. Royal Caribbean Cruises Ltd.,* 11-dv-22798-CA [DE 86]; *Lancaster v. Carnival Corp.,* 14-cv-20322 [DE 148] (limiting testimony).

As more fully set forth below, Jaques should be precluded from testifying as his proposed testimony is not admissible under *Daubert v. Merrell Dow Pharms., Inc.* 409 U.S. 579, 589 (1993).

## ARGUMENT AND MEMORANDUM OF LAW

### I. Legal Standard

Pursuant to Rule 702 an expert witness may testify in the form of an opinion, if: (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed.R.Evid. 702. The district court serves as a gatekeeper to the admission of scientific testimony, by ensuring that "speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Daubert,* 509 U.S. at 589; *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291 (11th Cir. 2005)(quoting *McCorvery v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002)). Relevant expert testimony is admissible only if the trial court finds: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandate in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Rosenfeld v. Oceania Cruises Inc.,* 2009 U.S. Dist. LEXIS 86714 *2-3 (S.D. Fla. 2009) quoting *U.S. v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004); *see also Daubert,* 509 U.S. at 589. The Eleventh Circuit has referred to these requirements as the "qualification," "reliability," and "helpfulness" prongs, and although there may inevitably be overlap, the three prongs remain distinct concepts that must be individually analyzed. *Frazier,* 387 F.3d at 1260. The party offering the expert testimony carries the burden of laying the proper foundation and admissibility must be shown by a preponderance of the evidence. *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir. 1999).

Expert testimony is not admissible if the expert is not qualified to testify competently about matters he intends to address. *See Daubert,* 509 U.S. at 589; *Frazier,* 387 F.3d at 1260; *City of Tuscaloosa v. Harcos Chems., Inc.,* 158 F.3d 548, 562 (11th Cir. 1998). "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" *Ciena Inv., Inc. v. XL Specialty Ins. Co.,* 280 F.R.D. 653, 660 (S.D. Fla. 2010)(quoting *Jack v. Glaxo Wellcome, Inc.,* 239 F.Supp.2d 1308, 1314-16.

"When an expert relies mainly on experience to show he is qualified to testify, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *Payne v. C.R. Bard, Inc.,* 606 Fed.Appx. 940, 942-943 (11th Cir. 2015)(quoting *Frazier,* 387 F.3d at 1258 (11th Cir. 2004)).

For expert opinions to meet the test of reliability, they must be based on sufficient facts or data. Fed.R.Evid. 702(b). "Expert evidence based on a fictitious set of facts is just as unreliable as evidence based on no research at all." *Guillory v. Domtar Indus., Inc.,* 95 F.3d 1320, 1330 (5th Cir. 1996). Moreover, "to be permissible, the expert must be in possession of the necessary facts which will allow the expert to form an accurate conclusion." *D & D Assoc., Inc. v. Bd. Of Educ. of N. Plainfield,* 411 F.Supp.2d 483, 488 (D.N.J. 2006); *see also Guidroz-Brault v. Mo. Pac. R. Co.,* 254 F.3d 825, 830-831 (9th Cir. 2001)("It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."); *Greenwell v. Boatright,* 184 F.3d 492, 497 (6th Cir. 1999)(noting expert testimony "is inadmissible when the facts upon which the expert bases his testimony contradicts the evidence."). The Eleventh Circuit has held it is proper for a trial court to exclude expert testimony whose factual basis is not adequately explained. *Cook v. Sheriff of Monroe Cty.,* 402 F.3d 1092, 1111 (11th Cir. 2005).

As a gatekeeper, a district court must "separate [. . .] expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge. *Presley v. Lakewood Eng'g & Mfg. Co.,* 553 F.3d 638 (8th Cir. 2009)(citations omitted); *U.S. v. Masferrer,* 367 F.Supp.2d 1365, 1382 (S.D. Fla. 2006)("The trial court's gatekeeping function requires more than simply taking the expert's word for it.").

The reliability of the expert's methodology is a context-specific inquiry. *Tampa Bay Water v. HDR Eng'g, Inc.,* 731 F.3d 1171, 1184 (11th Cir. 2013). The Supreme Court has instructed district courts to weigh four factors in making their decision: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community. *United Fire & Cas. Co. v. Whirlpool Corp.,* 704 F.3d 1338, 1341 (11th Cir. 2013)(per curiam)(citing *Daubert,* 509 U.S. at 593-594). Courts must be careful to focus on the reliability of the expert's principles and methodology rather than the correctness of his conclusions. *Kipperman v. Onex Corp.,* 2009 U.S. Dist. LEXIS 71666 (N.D. Ga. 2009). An expert must be able to explain step by step how and why he reached his given conclusions. *Lippe v. Bairnco Corp.,* 99 Fed.Appx. 274, 279 (2d Cir.

2004). Under *Daubert* "any step that renders the analysis unreliable [. . .] renders the expert's testimony inadmissible." *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 745 (3d Cir. 1994). This is true whether the step completely changes a reliable methodology or merely misapplies that methodology. *Id.* "In evaluating the reliability of an expert's method [ . . . ] a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink,* 400 F.3d at 1293 n7; *see also Perry v. U.S.,* 755 F.2d 888, 892 (11th Cir. 1985)("A scientist who has a formed opinion as to the answer he is going to find before he even begins his research may be less objective than he needs to be [ . . . ] to produce reliable [ . . . ] results.").

Finally, expert opinions must assist the trier of fact, by applying specialized expertise, to understand evidence or resolve a fact in issue. *Rosenfeld,* 2009 U.S. Dist. LEXIS 86714 *2-3 (S.D. Fla. 2009)(quoting *Frazier,* 387 F.3d at 1260); *see also Daubert,* 509 U.S. at 589. Expert testimony "generally will not help the trier of fact when it offers nothing more than what the lawyers for the parties can argue in closing argument." *Frazier,* 287 F.3d at 1262-1263.

### II. Randall Jaques's opinions fail to meet the qualification, reliability and helpfulness tests required for admissible expert testimony

#### A. Opinions offered by Randall Jaques

Jacques offers the following numbered opinions:

(1) Celebrity should be aware of the tile surface and the instability of the tile surface with a shower towel mat on it, and should have properly placed this floor mat so as to avoid slip/trip and fall accidents which are foreseeable to the cruise lines, however unforeseeable for the passenger as to the hazard posed;

(2) Celebrity did not follow their own policy and procedures and placing the shower mat in its proper folded position either in thirds in front of the shower threshold or to the side of the toilet. What the cabin stewardess did was to improperly place the towel during the turndown service on evening of the 3rd night of the voyage between 8:00 p.m. and 9:00 p.m. What should have taken place was for the stewardess to place the towel off to the side of the toilet or away from the shower floor where a passenger would step on it. At the very least, if in this case, if it were folded in thirds in front of the shower, instead of in half, Mrs. Jordan told me her foot would have missed the towel, which is the goal of the policy. My measurements confirm this;[2]

(3) Celebrity Cruises safety committee members and the executive committee members of the ship should have corrected this improper way of placing towel mats during the daily walk about inspections. They had from at approximately 9:00 p.m. at the latest to sometime after midnight (at least three hours) to inspect and correct the

---

[2] No measurements of Jordan's foot or the bath mat are provided in Jaques' report.

shower towel mat placement. The shipboard management should have realized they had a hazardous situation and should have taken corrective action, especially since this is a tile flooring that is unreasonably slippery when wet or dry with a towel on it, especially one folded over."

In addition to the three numbered opinions above, Jacques notes in his report "It is imperative that Celebrity . . . properly train and supervise the housekeeping staff . . .It is my opinion that Mrs. Jordan did nothing to contribute to her accident and subsequent injuries . . . .The purpose of the 'watch your step' sign on raised thresholds on a ship is to warn passengers of the extra height needed for flooding, not to warn a passenger to (sic) a hazardous situation like a folded towel on a tile floor . . ." He adds "My testing showed . . . that when the mat is improperly placed . . . being folded in half . . . the shower towel mat will slide forward and as in Mrs. Jordan's case, you will fall."[3]

### B. Jaques' work experience is not relevant and does not qualify him to render the opinions offered

Jaques describes his work experience as: police officer/detective for Coral Gables; Security chief for Norwegian Cruise Line from 2001-2003; Security Chief "briefly" in 2004 for Disney Cruise Line; Security manager and safety officer for Holland America Line from March 2005-July 2006; and Security Officer for Carnival Corporation until 2007. Since leaving Carnival Jaques has not been employed by a cruise line but started a career in "marine/maritime security and safety consultancy." [Exhibit B]. Although Jaques is a high school graduate with an Associate of Arts degree from Career College of the Air Force, he does not hold a bachelor's degree (or higher-level degree) in any field. *Id.* Jaques has not published any books, articles, or texts on any subject relevant to this case, including slip resistance testing, standards for coefficient of friction, housekeeping standards and supervision, ergonomics, human factors, or signage.[4]

Jaques' personal background in law enforcement as summarized in his Rule 26 report, together with his lack of any professional education relevant to this matter, demonstrates he is not even minimally qualified to render the opinions reported, particularly regarding slip resistance testing standards and methods, shipboard housekeeping policies, training and supervision of housekeeping employees, the "purpose" of the watch your step signs prominently engraved on the thresholds to the bathroom and shower, ergonomics of stepping onto a bath mat, or any standards for stateroom

---

[3] Notably, Jacques does not have an opinion regarding the standard for an acceptable coefficient of friction of the bathroom floor – wet or dry – or that Celebrity's floor fell below an accepted standard coefficient of friction.
[4] No such standards are referenced in his report as a basis for his opinions.

bathroom inspections applicable to Celebrity. Nor does Jaques have any work experience or education in biomechanics, human factors or ergonomics.

"When an expert relies mainly on experience to show he is qualified to testify, "<u>the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts</u>. *Payne v. C.R. Bard, Inc.,* 606 Fed.Appx. 940, 942-943 (11th Cir. 2015)(quoting *Frazier,* 387 F.3d at 1258 (11th Cir. 2004)) (emphasis suppled).

1. **Jaques has no related work experience to support opinion one**

Jaques has failed to explain how his work experience applies to the facts of this case or the opinions he offers. Nothing in his work experience supports his opinion number one that Celebrity "should be aware of the tile surface," the "instability of the tile surface" and should have placed the bath mat "properly . . .so as to avoid slip/trip and fall accidents which are foreseeable to the cruise lines." [Exhibit B]. Putting aside that this is a legal conclusion rather than an expert opinion derived from any reliable methodology, and that Jaques fails to note any fact (such as a prior similar incident, e.g.) to support his opinion regarding foreseeability, Jaques' reports reveal his lack of work experience regarding proper placement of bath mats or work experience with industry standards for housekeeping policies regarding bath mats.

2. **Jaques has no related work experience to support opinion two and training opinions**

Jaques lacks work experience in training or supervising housekeeping staff on the proper method of folding bath mats. He is unqualified, having never worked for Celebrity Cruises in any capacity including any positions that develop housekeeping policies, to render opinion two that the "goal" of the policy to fold towels in thirds (versus halves) is to avoid Plaintiff from stepping on the towel. Moreover, Jaques does not cite any work experience through which he would have gained knowledge regarding housekeeping industry standards. Similarly, Jaques' former work experience does not indicate any expertise in the usage of signage or the purpose of signage such as the "watch your step" signage visible where the Plaintiff fell.

3. **Jaques lacks related work experience to support opinions that the subject floor was unreasonably slippery at the time of the alleged incident**

Jaques work experience in security does not qualify him to testify as to when a bathroom tile floor (wet/dry/or with a towel on it) becomes "unreasonably" slippery as indicated in his third opinion and following paragraphs. He has no engineering work experience, and no expertise in slip resistance standards, testing, industry-recognized methods of scientific testing and compliance (and

none are cited in his report). Jaques has not explained how his security experience leads him to the conclusions he reaches. Thus, he is unqualified to render opinion three regarding the "hazardous," "unreasonably slippery," and "inherently dangerous" condition of the subject bathroom floor, as set forth in his report.

This Court recently struck Jaques as an expert in a similar trip and fall case for lack of qualifications (among other reasons). *See, Leroux v. NCL (Bahamas) Ltd.,* No. 15-23095-CIV-WILLIAMS/SIMONTON, 2017 WL 2645755 *6 (S.D.Fla. June 19, 2017). Leroux claimed she tripped over the threshold between her cabin and balcony. As succinctly put by Chief Magistrate Judge Simonton:

> **[T]here is nothing in Jaques' qualifications that would indicate that he is an expert as to the cause and/or prevention of trip and falls** . . . While the Report indicates Jaques has investigated over 3,000 accidents and injuries, including slips and falls and trip and falls, the Report fails to explain what actions Jaques took during the course of those "investigations." There is no statement that Jaques performed any type of analysis, either forensic or reconstructive, or did anything other than responding to and reporting such incidents . . . **In other words, the fact that Jaques may have responded to, collected facts related to and created a report for a host of different incidents on a ship, which reasonably could constitute an "investigation," does not mean that he is qualified to render an opinion on what constitutes industry standards to prevent trips on ships, or proper signage related to those incidents. . . Simply put, Jaques is not qualified to render the opinions for which Plaintiff has offered him in this case.**

*Id.* at *6-8 (emphasis supplied). Despite Jaques' claims to be an expert in all manner of shipboard mishaps, including slip and falls, courts in this District have routinely stricken or limited his opinions on a number of grounds. *See, e.g., Leroux, supra; Farley v. Oceania Cruises, Inc.,* 2015 WL 1131015, *1 (S.D.Fla. 2015)(Jaques fails *Daubert* due to lack of citation to any publications or experiments, lack of detailed explanation as to how his experience supports his opinions, lack of detailed explanation of what materials he considered in reaching conclusions); *Johnson v. Carnival Corp.,* 07-20147-CIV, 2007 WL 9624459, *7 (S.D.Fla. 2007)("Jaques' anticipated testimony regarding shipboard safety is not sufficiently reliable and will not assist the jury"); *Mendel v. Royal Caribbean Cruises, Ltd.,* Case No. 10-cv-23398 [DE 149] (S.D.Fla. 2012)(excluding Jaques' testimony as to all topics due to unreliable methodology and lay opinions except his measurement of distances with a tape measure); *Lancaster v. Carnival Corp.,* No. 14-cv-20332-KMM, 2015 U.S.Dist. LEXIS 189228, *6 (S.D.Fla. 2015)(holding that "Jaques' testimony intended to redefine the applicable standard of care . . . Or assert that it is anything other than 'reasonable care under the circumstances'" is inadmissible); *Higgs v. Costa Crociere*

**FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

*A.p.A. Co.,* 2016 WL 4370012 (S.D.Fla. 2016)(striking Jaques' opinions due to impermissible legal conclusions); *Umana Fowler,* 49 F.Supp.3d 1120 (excluding Jaques' testimony entirely due to unreliable and unclear methodology); *Webb v. Carnival Corporation,* 2017 WL 288087 (S.D.Fla. 2017)(noting that "Mr. Jaques' opinions and testimony are not 'tethered to any supporting materials or sources' as there are no studies, peer-reviewed materials, treatises, sources, data nor anything else underlying his views" and that Jaques' "opinions are conclusory statements regarding Defendant's fault that is not tied to any methodology.")(*citing, with approval, Farley,* 2015 WL 1131015 at *7).

Based on Jaques utter lack of work experience or education regarding industry standards for housekeeping policies on bath mat placement, training and supervision of housekeepers, standards, practices and compliance for slip resistance in cruise ship bathroom floors, he should be stricken as an expert to testify regarding those matters.

### C. Jaques' methodology is unreliable and does not satisfy *Daubert*

#### 1. **Jaques' opinions are not based on a reliable methodology**

Federal Rule of Evidence 702 requires that expert testimony be "the product of reliable principles and methods." There are no underlying principles or reliable methods used in reaching any of the opinions Jaques proffers. Jaques opines that "this is a tile flooring that is unreasonably slippery when wet or dry with a towel on it, especially one folded over" and "my testing of the flooring quantified that the tile area of the floor was inherently dangerous when wet" "when dry and a towel is placed in front of the shower threshold, it also is inherently dangerous" "My testing showed . . . when the mat is improperly placed . . .when you step on it . . . the shower towel mat will slide forward." [Exhibit B.]. The opinions regarding the slip resistance of the subject floor fail to satisfy Daubert because they are unsupported by a reliable scientific method, facts or data.

Jaques describes his "methodology" for testing the slip resistance of the towel on top of the bathroom floor as "I applied 1 pound of pressure to the towel as it was laid out on the tile floor as stated by the plaintiff on the night of the accident. On a dry surface the towel slides forward and bunches up." Jaques includes photographs of the exemplar bath mat bunched up against the shower threshold. In his supplemental report, Jaques attempts to bolster his opinion by explaining "the force that I applied at an angle was through my hand; however an exact measurement of the force is unnecessary, because it is well known in our industry that given the light weight of the shower towel mat, it will move at some angle of application, regardless of the floor's coefficient of friction and regardless of its coefficient of friction to the floor." [Exhibit B.].

Putting one's hand on a bath mat and pushing it around a floor has not been recognized by any court as a reliable scientific methodology for arriving at an expert opinion regarding slip resistance. Similarly, a photograph of a bunched-up towel is not a substitute for a scientific conclusion. Jaques' method is subjective because it is Jaques' own hand which is applying pressure or force, at an angle he admits cannot accurately reproduce the angle Plaintiff stepped on the towel, because Plaintiff could not recall that detail. [Exhibit B, at Supp. Report p.1]. He also compares his height to the Plaintiff's reported height to guestimate (with no supporting scientific rationale) the angle at which her foot stepped onto the bath mat. [*Id.*].

Jaques does not attempt to inject any objective criteria into his method of testing slip resistance properties of the towel on top of a dry tiled floor. For example, Jaques did not measure the weight of the exemplar towel, its dimensions, or its composition. Nor did he reference the composition of the bathroom floor tile surface. Jaques does not cite an accepted coefficient of friction standard applicable to the subject floor or opine that Celebrity's bathroom floor fell below any acceptable standard for coefficient of friction. Finally, in support of his opinion that the subject floor was dangerous, he does not cite any investigation or history of slip and falls on bath mats on Celebrity's ship.

During the scene inspection conducted by Jaques, Bryan Emond, a registered professional engineer and retired U.S. Coast Guard Commander with 30 years' experience investigating marine safety was present. Emond, retained as an expert by Celebrity, has been a Certified XL Tribometrist, for ten years, meaning he is certified to perform slip resistance testing. [See Emond expert report, attached as Exhibit C]. Emond observed Jaques use an American Slip Meter (ASM) 825 to test the coefficient of friction of the subject bathroom floor, and notes that the device Jaques used is not one of the devises identified as accepted for use with the standards for measuring coefficient of friction of a ceramic or hard surface flooring. [See Exhibit C citing ANSI A137.1 and ANSI B101.3]. Jaques concedes he used the ASM 825 to conduct his testing. [Exhibit B]. Emond's report explains how the testing Jaques conducted with his hand are invalid for engineering reasons: " . . . in Mr.. Jaques' test, to cause the bath mat to slide, the tester need only change the angle until the bath mat begins to move . . . a proper test would discern force perpendicular to the floor and parallel to the floor and consider the exact angle the force is applied to determine these values." [Exhibit C].

Even without the enlightenment of Emond's opinions regarding the sufficiency of Jaques' testing methodology, it is obvious from the lack of objective measurements, lack of comparisons

with accepted standards, and subjective references, that Jaques' methodology is unreliable under *Daubert.*

As a gatekeeper, a district court's duty is to "separate [. . .] expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge. *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638 (8th Cir. 2009)(citations omitted). Jaques opinions based on this method for testing slip resistance is a prime example of subjective speculation masquerading as scientific knowledge and should be stricken. Jaques would have the court just take his word for his conclusion that the floor was unreasonably slippery, rather than require a reliable methodology to support his opinions. Opinions based on such a methodology are unreliable as a matter of law. *U.S. v. Masferrer*, 367 F.Supp.2d 1365, 1382 (S.D. Fla. 2006)("The trial court's gatekeeping function requires more than simply taking the expert's word for it.").

Furthermore, regarding the coefficient of friction tests Jaques conducted on the bathroom floor without the bath mat, Jaques' test results have no value because he did not cite any industry standard for the appropriate coefficient of friction for a bathroom floor. Without an applicable standard against which to compare his testing results, no reliable conclusion or opinion regarding the unreasonableness of slipperiness can be made, and his opinions should be stricken. Furthermore, Jaques' reports do not claim Celebrity's bathroom floor fell below any industry accepted standard for coefficient of friction.

The Supreme Court has instructed district courts to weigh four factors in making their decision regarding the reliability of one's methodology: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community. *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013)(per curiam)(citing Daubert, 509 U.S. at 593-594). Jaques' methodology fails every prong: it cannot be independently tested because Jaques' own use of hand pressure and personal height calculations factor into his methodology, there is no reference that his method has been subject to peer review and publication; there is no published error rate in his methodology, and there is no evidence that his technique has been generally accepted in the scientific community. Pushing around a towel on a bathroom floor simply does not stand up to the methodology criteria required to admit Jaques' opinions.

2. **Jaque's opinions fail to apply facts to data**

Federal Rule of Evidence 702 requires that expert testimony be based on sufficient facts/data. "[A] trial court may exclude expert testimony that is imprecise and unspecific, or whose factual basis is not adequately explained." *Coquina Invs.* 2011 U.S.Dist. LEXIS 120267, at *23 (*citing Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.,* 402 F.3d 1092, 1111 (11th Cir. 2005)(internal quotations omitted). The conclusions Jaques reaches lack factual bases and/or contradict Plaintiff's testimony. Jaques lists "materials reviewed" in his Rule 26 report and indicates that he reviewed all depositions. [Exhibit B]. However, he states in a parenthetical on the first page of the report that he had not been provided with any depositions. *Id.* Although he reportedly interviewed Plaintiff and her sister, he formulated his opinions without the benefit of Plaintiff's sworn account of the unwitnessed fall. As can be seen from Plaintiff's sworn testimony below, Jacques' assumptions are not supported by Plaintiff's testimony.

Jacques reports: "Mrs. Jordan was not aware that the half folded over towel mat was a hazard in her path <u>because the towel placement is deceiving</u> when you look down at it and step into the bathroom." [Exhibit B, at p. 9] Jaques does not explain how the placement of the towel is "deceiving" but Plaintiff testified she clearly saw the bath mat, it was not camouflaged in any way, and she intentionally stepped on it, as indicated below.

> Q: . . . When you went into the bathroom, did you notice anything about the bathroom?
> A: Yes, I noticed the bath mat was on the floor.

[Exhibit A, 89:1-4].

> Q: You saw the bath mat before you stepped on it?
> A: Yes.
> Q: Did you turn the light on before you walked into the bathroom?
> A: Yes.
> Q: And you looked down at the floor?
> A: Yes.

[Exhibit A, 89:19-90:1].

> Q: Now, you opened the cabin door that night. You had the light on. You looked down. There was nothing obstructing your view of the floor, was there?
> A: No.
> Q: And there was nothing that made the mat camouflaged in any way, was there?
> A: No

[Exhibit A, 98:5-15].

Based on Plaintiff's testimony, Jaques' opinion that the placement of the towel was hazardous because its appearance is "deceiving" when you look down and step into the bathroom should be stricken as lacking any basis in fact. "Expert evidence based on a fictitious set of facts is just as unreliable as evidence based on no research at all." *Guillory v. Domtar Indus., Inc.,* 95 F.3d 1320, 1330 (5th Cir. 1996). Put another way, Jaques' opinion regarding "deceiving" towel placement does not fit the facts of the case and must be excluded. *See McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing Daubert, 509 U.S. at 591) (holding expert testimony does not help the jury if it fails to "fit" the facts at issue); *Johnson v. Ladder*, 2008 U.S. Dist. LEXIS 102031, at *20 n4 (S.D. Ala. 2008) *(citing Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1312 (11th Cir. 1999)) ("Where the opinion does not advance the question in dispute for which the opinion is proffered, then there is no 'fit' and the opinion should be excluded").

Jaques' opinions regarding the slip resistant properties of the floor <u>when wet</u> are irrelevant and inadmissible because Plaintiff testified the floor was not wet and had no slippery or foreign substance on it at the time of her fall.

> Q: When you went into the cabin that night and you had your accident, was there anything wet on the floor?
> A: No.

[Exhibit A, 112:15-18]

> Q: On the night of your accident, you didn't notice any foreign substance on the bathroom floor?
> A: No.

[Exhibit A, 124:8-11]

> Q: The night of your incident, you didn't notice any oily or slippery type of substance on the floor of the cabin bathroom?
> A: No.
> Q: Is it accurate to say that the thing that made your foot slip as you stepped in was the bath mat as opposed to some other foreign substance on the floor?
> A: I don't know why the mat slipped.

[Exhibit A, 123:18-124:1].

As there is no evidence in the record that any wetness was present or contributed to Plaintiffs' alleged incident, and Plaintiff does not allege such a condition, Jaques' opinions regarding the slip resistance properties while the subject floor is wet should be stricken.

In assessing expert opinions under *Daubert,* "[t]he expert's factual assumptions must simply have a reasonable basis in the evidence." *Higgs,* 2016 WL 4370012, *6 (*citing Coquina Invs. v. Rothstein,* 2011 WL 4949191, *8 (S.D.Fla. 2011). Jaques' third opinion is based on a series of assumptions

found nowhere in the record and is therefore based on an insufficient methodology. "An anecdotal account of one expert's experience, however extensive or impressive, does not by itself equate to a methodology." *Algarin v.Dep't of Corr.,* 406 F.Supp.2d 469, 477 (S.D.N.Y. 2006)(*quoting Berk v. St. Vincent's Hosp. and Med. Ctr.,* 380 F.Supp.2d 334, 354 (S.D.N.Y. 2005)).

In his third opinion, Jaques states that "safety committee members and the executive committee members" should have discovered and corrected the [allegedly] hazardous improper placement of the towel mat in Plaintiff's cabin during the three hours Jaques' believes Plaintiff was outside of her cabin the night of the incident. [Exhibit B]. First, there is no identification of persons or job duties of "safety committee members" or "executive committee members" employed by Celebrity in the record, or that any such persons conduct "daily walk about inspections" which would entail entering passenger cabin bathrooms to evaluate how their towels or bath mats are folded. This opinion seems to be founded on nothing more than a scenario taken from Jaques' imagination.[5] In any event, Jaques' report lacks any facts to support this opinion and should be stricken on that basis.

Furthermore, this opinion seeks to impose a non-existent duty on Celebrity to enter and inspect each guest's bathroom every three hours to determine whether there is a properly folded bath mat on the floor. It is an attempt to subject Celebrity to an extremely heightened duty of care and thereby mislead the fact finder. As the Cabin Steward assigned to Plaintiff's cabin, Malcolm D'Souza testified, a "guest can keep it [the bath mat] wherever he wants" and move the towel and mat. [Deposition of Malcolm D'Souza, attached as Exhibit D, at 61:13-21]. D'Souza further testified he never left the bath mat folded in the manner Plaintiff described, and that once he leaves the cabin there is nothing stopping a guest from freely moving the mat or towel. [Exhibit D, at 68:9-19]. Furthermore, there is no evidence that the manner in which Plaintiff described the bath mat being folded was a known hazard such that, even if hypothetical bathroom inspections were made between 9:00 pm and midnight, anyone would change the configuration of the bath mat on the floor. Because Jaques' third opinion lacks any factual, scientific, or legal basis it must be stricken.

Contrary to engaging in a reliable methodology based on the evidence, Jaques makes an improper legal conclusion and ignores the testimony of Plaintiff when reaching his opinion that

---

[5] Jaques may have drawn this inspiration from his work with Carnival ten years prior to the incident, during which Carnival may have had some version of a safety team making rounds on the ship to address any hazards. Jaques has never worked on a Celebrity ship and his assumptions lack any basis in fact.

"Mrs. Jordan did nothing to contribute to her accident and subsequent injuries." [Exhibit B, p. 9]. It is improper to admit expert testimony that simply repeats what a lawyer can argue in closing arguments. *Frazier,* 287 F.3d at 1262-1263. "In evaluating the reliability of an expert's method [ . . .] a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink*, 400 F.3d at 1293 n.7. An expert witness may testify as to his opinion on an ultimate issue of fact, but he "may not testify as to his opinion regarding ultimate legal conclusions." *U.S. v. Delatorre,* 308 Fed. Appx. 380, 383 (11th Cir. 2009). Here Jaques conclusion regarding Plaintiff's comparative negligence is improper and not supported by any methodology or any fact in the record.

As a factual matter, Plaintiff testified she could have moved the towel before she stepped on it but decided to step on it anyway.

> Q:   Could you have reached down and moved the mat before stepping into the bathroom?
> A:   Could I? Yes.

[Deposition of Plaintiff 100:23-25].

> Q:   All right. So you saw the mat there, and you intentionally stepped on it?
> A:   Yes.

[Deposition of Plaintiff 101:24-102:1].

Jaques opines that "The purpose of the 'watch your step' sign on raised thresholds on a ship is to warn passengers of the extra height needed for flooding, not to warn a passenger to a hazardous situation like a folded towel on a tile floor." Jaques omits any mention of his experience with the development of policies and purposes of thresholds in passengers' stateroom bathrooms, literature, studies, books, or standards to support the blanket statement. Furthermore, Plaintiff acknowledged that she observed two "watch your step" signs in the cabin bedroom prior to the fall.

> Q:   In the cabin bathroom, there were two signs indicating to watch your step; is that right?
>
> A:   Yes.
>
> Q:   And you had seen those before your accident?
>
> A:   Yes.

[Deposition of Plaintiff 120:14-19].

Thus, there is no reasonable evidentiary factual basis for Jaques' opinion regarding the purpose of the "watch your step" signs in Plaintiff's stateroom bathroom.

### D. Jaques' opinions are not helpful to the trier of fact

Jaques' opinions are not helpful to the trier of fact because, as in at least eight other matters in this District, they fail to offer anything beyond the comprehension of a layperson, they offer conclusions of law, they tell the fact-finder which result to reach, they confuse the factfinder, or they substitute an artificially heightened standard of care. *See Johnson v. Carnival Corp.,* 2007 WL 9624459, at *7 (S.D. Fla. 2007)("even Jaques plainly admits that most of his opinions are common sense"); *Mendel v. Royal Caribbean Crusies, Ltd.,* Case No. 10-cv-23398, [DE 149] (S.D.Fla. 2012)(excluding Jaques' testimony as to all topics due to unreliable methodology and lya opinions except his measurement of distances with a tape measure)[6]; *Umana-Fowler,* 49 F.Supp.3d at 1124 (Jaques' "expert opinion is not helpful and the risk is too great that the trier of fact will be confused or place undue weight on such an opinion"); *Lancaster v. Carnival Corp.,* 2015 U.S. Dist. LEXIS 189228, at *6 (S.D.Fla. 2015)(finding "inadmissible Jaques' testimony intended to redefine the applicable standard of care "); *Farley,* 96 Fed.R.Evid.Serv. 1267; *Higgs v. Costa Crociere A.p.A. Co.,* 2016 WL 4370012 (S.D. Fla. 2016)(striking Jaques' opinions due to impermissible legal conclusions); *Leroux,* 2017 WL 2645755 at *10; *Webb v. Carnival Corp.,* 2017 WL 2880087, at *4 (S.D. Fla. 2017)("Jaques may not testify that '[defendant] is at fault' or that [defendant] breached its duty of care or failed to follow the proper procedures [ . . . ] because they are ultimately legal conclusions.").

A layperson can observe the configuration of the bathroom Plaintiff claims existed on the night of the incident. Absent a reliable scientific methodology, Jaques' opinions about the alleged inherently dangerous nature of the floor with a folded towel on top, based up on a made-up test of pushing a towel around the bathroom, are not helpful for the jury to make such a determination. Moreover, Jaques' anticipated testimony will confuse the jury because he tested slip resistance for a wet floor (which is contrary to the testimony), he opined regarding the "deceiving" nature of the bath mat on the floor (similarly contrary to Plaintiff's testimony), and he opined about non-existent legal duties of imaginary "committee members."

### III. Conclusion

Jaques should be precluded from testifying as his proposed testimony is not admissible under *Daubert v. Merrell Dow Pharms., Inc.* 409 U.S. 579, 589 (1993), and its progeny. Jaques' opinions fall short of the qualifications, reliability, and helpfulness tests required to admit his testimony as an expert.

---

[6] Jaques did not include any measurements of the bathroom floor, door, threshold, tiles, or the exemplar bath mat in his report in the instant case.

WHEREFORE, Defendant, CELEBRITY CRUISES, INC., respectfully requests the Court enter an Order striking Randall Jaques as an expert for the Plaintiff and excluding his opinions for use in dispositive motions and at trial.

Dated: June 11, 2018
Miami, Florida

Respectfully submitted,

**FOREMAN FRIEDMAN, P.A.**

BY: */s/ Darren W. Friedman*
Darren W. Friedman, Esq. (FBN 0146765)
dfriedman@fflegal.com
Rachael M. Fagenson, Esq. (FBN 91868)
rmitchell@fflegal.com
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, FL 33131
Tel: 305-358-6555/Fax: 305-374-9077
*Counsel for Celebrity Cruises*

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on this 11th day of June, 2018. We also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

By: */s/Darren W. Friedman*
Darren W. Friedman, Esq.

**SERVICE LIST**
CASE NO: 17-20773-WILLIAMS/Torres

| | |
|---|---|
| Peter M. Commette, Esq. | Darren W. Friedman, Esq. |
| PMC@commettelaw.com | dfriedman@fflegal.com |
| PMCommette@aol.com | sargy@fflegal.com |
| Paralegal1@commettelaw.com | Rachael M. Fagenson, Esq. |
| Peter M. Commette, P.A. | rmtichell@fflegal.com |
| 1323 SE 3rd Avenue | Marc A. Rapaport, Esq. |
| Fort Lauderdale, FL 33316 | mrapaport@fflegal.com |
| Tel: 954-764-0005/ Fax: 954-329-3881 | mfonticiella@fflegal.com |
| Counsel for Plaintiff | FOREMAN FRIEDMAN, PA |
| | One Biscayne Tower – Suite #2300 |
| | 2 South Biscayne Boulevard |
| | Miami, Florida 33131 |
| | Tel: 305-358-6555/ Fax: 305-374-9077 |
| | Counsel for Defendant |
| | |
| | Bryan E. Probst, Esq. |
| | bprobst@rccl.com |
| | jabez@rccl.com |
| | Royal Caribbean Cruises, Ltd. |
| | 1050 Caribbean Way |
| | Miami, FL 33132 |
| | Tel: 305-982-2956/ Fax: 305-539-6561 |
| | Counsel for Defendant |