UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO: 17-CV-20773-KMW

SALLY JORDAN,

                    Plaintiff,

vs.

CELEBRITY CRUISES INC.,

                    Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S *DAUBERT***
**CHALLENGES TO PLAINTIFF'S EXPERT**

Plaintiff, Sally Jordan, hereby responds to Defendant, Celebrity Cruise's *Daubert* Challenge to Plaintiffs Expert [DE 45] as follows:

### Background

This is a maritime personal injury case involving a cruise passenger who slipped and fell on a bathroom floor aboard a Celebrity vessel. It is undisputed that as a result of that slip and fall Mrs. Jordan suffered damages. Plaintiff has retained Randall Jaques as a liability expert. In its *Daubert* Motion CELEBRITY seeks to exclude those four witnesses' testimony.

We will first address the law to be applied under *Daubert* and then apply it to the Motion to Strike.

### MEMORANDUM    OF

**LAW A.  The *Daubert* Standard.**

In determining the admissibility of expert testimony, courts analyze three basic requirements: (1) the expert's  qualifications; (2) the reliability of the testimony; (3) and the extent to which the testimony will be helpful to the trier of fact. *Sorrels* v. *NCL (Bahamas)*

1

*Ltd.,* 796 F.3d 1275, 1281 (11ᵗʰ Cir. 2015). (1) Qualifications

The qualification threshold to be applied under *Daubert* is not stringent, and, as long as an expert is "minimally" qualified, the opinion evidence should be admissible. *Feliciano* v. *City of Miami Beach,* 844 F.Supp.2d 1258 (S.D. Fla. 2012). *J.G.* v. *Carnival Corp.,* 2013 WL 752697 (S.D. Fla. 2013) (describing qualification threshold as "relatively low").

(2)     Reliability

*Daubert,* as expanded by subsequent Supreme Court cases, applies to all forms of expert testimony that are "technical" or "specialized."    In *Kumho Tire Company* v. *Carmichael, 526* U.S.  127, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) the Supreme Court observed that "engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases . . . in other cases, the relevant reliability concerns may focus upon personal knowledge or experience."

When evaluating non-scientific expert testimony, the trial court *may* consider one or more of the *Daubert* factors, but "the test of the reliability is flexible and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *James* v. *Robert Bosch Tool Corp.,* 2015 WL 470586 (M.D. Fla. 2015)(quoting *Kumho Tire Co.,* 526 U.S. at 141).

Not all expert opinions deal with a test in a lab or a recreation of an occurrence, and therefore, situations exist in which the *Daubert* factors do not apply.  *McGuire* v. *Alpinestars,* S.P.A., 2005 WL 1503569 (W.D. Kent. 2005).   When dealing with non-scientific testimony, *"Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *United States* v. *Hankey,* 203 F.3d

1160, 1169 (9th Cir. 2000).

As a general rule, questions such as those raised by Celebrity's motion, related to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its inadmissibility and should be left for the jury's consideration.  The Eleventh Circuit has repeatedly stressed, in maritime slip and fall cases particularly, that it is the role of the adversary system, not the court, to highlight allegedly weak evidence. *Rosenfeld* v. *Oceania Cruises, Inc.,* 654 Fed.3d. 1190,1193 (11th Circ. 2011); *Sorrels,* 796 F.3d at 1285; *see generally Daubert 509* U.S. at 596 ("vigorous cross examination, presentation of contrary evidence, and careful instructions on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"). *See also, Maiz* v. *Virani,* 253 F.3d 641, 666-68 (11th Cir. 2001). *Vision I Homeowners' Association, Inc.* v. *Aspen Specialty Insurance Company,* 674 F.Supp.2d 1321, 1325 (S.D. Fla. 2009).  A district court's gatekeeper role "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Medical Corp.,* 184 F.3d. 1300, 1311 (11th Cir. 1999).

### (3) Helpfulness/Fit

Typically, expert testimony is helpful and therefore admissible if it concerns matters that are beyond the understanding of the average lay person. *US. v. Frazer,* 387 F.3d 2044, 2062 (11th Cir. 2004).

### B. APPLYING *DAUBERT* TO THIS CASE

Celebrity seeks to preclude Jaques' testimony wholesale but The Eleventh Circuit cautions that where a portion of the proffered expert testimony is reliable, the wholesale exclusion of the testimony constitutes an abuse of discretion. *Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d 1275 (11th Cir. 2015). Simply put, it is not the function of the court to determine the

ultimate persuasiveness of the testimony. *Rosenfeld v. Oceania Cruises, Inc.,* 654 F.3d 1190, 1193 (11th Cir. 2011).

Under *Daubert,* the proponent of expert testimony need not show that the opinion proffered is scientifically correct, but only -- based upon the preponderance of the evidence –that the opinion is reliable. *In re: Paoili Railroad Yard PC Litigation v. Southeastern Pennsylvania Transportation Authority ("SEPTA"),* 35 F.3d 717, 744 (3rd Cir. 1994).

### Plaintiff's Liability Expert Randall Jaques

Plaintiff s expert Randall Jaques has expressed the following opinions and conclusions:

**Expert Opinion 1.** Celebrity Cruises is or should be aware of the tile surface and the instability of the tile surface with a shower towel mat on it, and should have taken precautions to have properly placed this floor mat so as to avoid slip/trip and fall accidents, which are foreseeable for the cruise lines, however unforeseeable for the passenger as to the hazard posed.

**Expert Opinion 2.** Celebrity did not follow their own policy and procedures and placing the shower mat in its proper folded position either in thirds in front of the shower threshold, or to the side of the toilet. What the cabin stewardess did was to improperly place the towel during the turndown service on evening of the 3rd night of the voyage between 8:00 p.m. and 9:00 p.m. What should have taken place was for the stewardess to place the towel off to the side of the toilet or away from the shower floor where a passenger would step on it. At the very least, if in this case, if it were folded in thirds in front of the shower, instead of in half, Mrs. Jordan told me her foot would have missed the towel, which is the goal of the policy. My measurements confirm this.

**Expert Opinion 3.** Celebrity Cruises safety committee members and the executive committee members of the ship should have corrected this improper way of placing towel mats during the daily walk about inspections. They had from at approximately 9:00 p.m. at the latest to sometime after midnight (at least three hours) to inspect and correct the shower towel mat placement. The shipboard management should have realized they had a hazardous situation and should have taken corrective action, especially since this is a tile flooring that is unreasonably slippery when wet or dry with a towel on it, especially one folded over.

**Conclusion:** The shower towel mat and how it is folded and placed is only part of the problem which caused this accident. As stated in my report and in my photographic exhibits, it is imperative that Celebrity Cruises understand how to properly train and then supervise the housekeeping staff.  My testing of the flooring quantified that the tile area of the floor was inherently dangerous when wet, and when dry and a towel is placed in front of the shower threshold, it also is inherently dangerous. Mrs. Jordan was not aware that the half folded over towel mat was a hazard in her path on that tile floor when stepping in at an angle, nor was she able to see any hazards in her path because the towel placement is deceiving when you look down at it and step into the bathroom. The purpose of the "watch your step" sign on raised thresholds on a ship is to warn passengers of the extra height needed for flooding, not

4

to warn a passenger to a hazardous situation like a folded towel on a tile floor, that she cannot reasonably anticipate or foresee to be dangerous to the step. It is my opinion that Mrs. Jordan did nothing to contribute to her accident and subsequent injuries. She was using the bathroom on early morning of the 4th day for the first time since evening turn down service on the 3rd day and was stepping inside the bathroom without shoes, as can be expected, and the shower towel mat was placed there by the stewardess doing the nightly turndown service. My testing showed as depicted in Exhibits 4/5 that when the mat is improperly placed as in cabin 9028, being folded in half, so that when you step on it the mat protruding further into the bathroom than policy would specify, the shower towel mat will slide forward and as in Mrs. Jordan's case, you will fall.

Randall Jaques has the following qualifications, among many others, that are found in his

attached Declaration and his CV (Exhibit 1), which qualify him as an expert for the opinions he

has expressed in his Report:

Celebrity has moved to exclude Mr. Jaques's testimony on a number of levels. It

attempts to cite a number of cases which it believes negatively impact on his qualifications,

but not herein, as he has testified to above. Moreover, as he points out for the cases in which

he has been proffered as an expert:

1. In *Lancaster v Carnival Corporation,* 85 F. Supp. 3d 1341 (S.D. Fla. 2015), Chief Judge Kevin Michael Moore proclaimed that he is an expert in maritime safety and shipboard policy and procedures.

2. In the case of *Higgs v Costa Crociere S.P.A. Company,* 2016 WL 4375434 (S.D. Fla. 2016), he testified in trial about human behavior of passengers and how they react shipboard, their gate, their movements and how they do not recognize the unforeseen hazards before them, and cruise ship standards for safety practices.

3. In *Webb v. Carnival Corp.*, Case No. 15-CV-24230-Torres (S.D. Fla. July 6, 2017), Judge Torres acknowledged me as an expert in industry regulations as they apply to alleged overserving of a passenger and the purposes therefor, stating:

> Mr. Jaques' testimony and expert report on industry regulations for cruise safety practices is admissible because it goes "beyond the common knowledge of the average lay person" and "is helpful in establishing the applicable standard of care for Plaintiff's negligence claim." *Higgs*, 2016 WL 4370012, at *5. In addition, Mr. Jaques may testify about the Defendant's detailed policies and procedures that are in place to prevent the over service of alcohol to customers, including those procedures for what to do in the event of dealing with an intoxicated passenger. Both subjects are helpful to the trier of fact because they "offer more than what the lawyers for the parties can argue in closing arguments." *Bryant v. BGHA, Inc.*, 9 F. Supp. 3d 1374, 1390 (M.D. Ga. 2014). To this extent, Defendant's Motion is DENIED. *Higgs*,

2016 WL 4370012, at *5 ("Jaques may offer expert testimony regarding industry standards for cruise ship safety practices").

4. He also testified in the human behavior of passengers in these cases along with *Beam v Carnival Corporation,* Case No. 15-CV-22103-Turnoff (S.D. Fla. Feb. 26, 2016).

5. While he was limited in some cases, such as *Lancaster, Webb,* and *Higgs,* he gave extensive testimony to the jury on maritime safety and the shipboard management system (SMS).

6. Similarly, as an expert in STCW 95 (Standards of Training, Certification and Watchkeeping for Seafarers, ratified by the IMO in 1995), he has testified numerous times concerning human behavior as being for shipboard personnel a "look out for the unexpected" with all passengers and be prepared for these unexpected human events such as requiring assistance, and MOB (man overboard) open intoxication, inability to walk, and a ship passenger's feeling of reliance on and guidance from the master and crew in what is to the passenger "foreign environment" outside their control.   To say that I am uneducated to offer such opinions is wrong.  I am offering opinions in the Jordan case that have to do directly with human behavior, the ship's failure to follow its own policy and procedures, and the reason for the policy and procedure at issue, where the steward folded the shower floor towel in half, rather than in quarters, so that the towel protruded into where Mrs. Jordan would step, the exact condition which Celebrity's policy of folding in quarters is designed to prevent (see Exhibit B, a page directly from Celebrity's procedures manual).  I have direct education and experience in these very areas.

7. This court in *Umana-Fowler v. NCL (Bahamas) Ltd*., 49 F. Supp. 3d 1120 (S.D. Fla. 2014) and in *Leroux v. NCL (Bahamas) Ltd.,* Case No. 15-CV-23095-KMW (S.D. Fla. June 19, 2017), ruled his testimony inadmissible for reasons not present here.   Here, he has demonstrated experience and training in the safety standards of safe shower floor towel stowage, he has explained my methodology, and both Defendant's expert and he agree, as stated above, that the angle at which the force is applied to the shower floor towel, greatly affects the coefficient of friction results, which would otherwise be acceptable, and that given the light weight of the shower floor towel, it will move at some angle of application, regardless of the measured coefficient of friction between it and the floors.  Those are the exact facts presented to the trier of fact in this case, so that an expert should be allowed to explain and to assist the trier of fact.


Regarding testing, Mr. Jaques states in his Declaration:

1. The movement of the towel in my inspection and testing by using a small amount of pressure was just that, an example of the reasoning behind the ship protocol of keeping the shower floor towel away from someone stepping into the bathroom over a high threshold and at an angle. Even Mr. Emond, Defendant's expert, opined on this and agreed with me, where he reported at page 12 of his Report, "…the angle at which the force is applied greatly affects the results," and "Given the light weight of the shower floor towel, it will move at some angle of application, regardless of the coefficient of friction between it and the floors." This is especially true, if the towel is folded against itself, providing another layer of movement. The is not commonly understood by laymen; it is only understood by experts who have had to inspect the cause analysis of thousands of shipboard incidents and get to the cause of the

accident, many of which for him having involved towels on bathroom floors and the purposes for which they are folded or placed out of the way of someone stepping into the bathroom with their entry leg at an angle much more severe than someone stepping out of a shower and directly down.

2. The ASM825A meter is a fine, easily transportable instrument for testing coefficient of friction on tile surfaces. I calibrated it and used it properly, and my methodology not only is acceptable for the purpose offered, my conclusions about the folded over shower floor towel's instability for stepping into the cabin bathroom at an angle is borne out by Defendant's expert's report. I stand by all of my opinions and the bases therefor.

Despite the foregoing, the Defendant argues:

1. **Jaques has no related work experience**. Obviously, that is untrue based on the above.

2. **Jaques has no related work experience to support opinion two and training opinions.**

   Again, Jaques has significant related work experience based on the above.

3. **Jaques lacks related work experience to support opinions that the subject floor was unreasonably slippery at the time of the alleged incident.** As indicated above, the floor was slippery for stepping in at an angle.

4. **Jaques methodology was not defective.** As stated above, when evaluating non-scientific expert testimony, the trial court *may* consider one or more of the *Daubert* factors, but "the test of the reliability is flexible and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *James* v. *Robert Bosch Tool Corp.,* 2015 WL 470586 (M.D. Fla. 2015)(quoting *Kumho Tire Co.,* 526 U.S. at 141). Not all expert opinions deal with a test in a lab or a recreation of an occurrence, and therefore, situations exist in which the *Daubert* factors do not apply. *McGuire* v. *Alpinestars,* S.P.A., 2005 WL 1503569 (W.D. Kent. 2005).  When dealing with non-scientific testimony, *"Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or

theory behind it." *United States* v. *Hankey,* 203 F.3d 1160, 1169 (9th Cir. 2000). Under the facts of this case Jaques' methodology and proferred testimony is perfectly fine for the purposes for which it is proferred.

5. **Jaques points out where the facts are applied to his opinions, and his testimony will be helpful to the trier of fact.** Again, his experience in the exact area, and the fact that both experts agree that the angle of impact on the towel reduces the coefficient of friction, will be helpful to the jury in understanding the forces at play in this incident.

Wherefore, the Defendant's Daubert Motion should be denied.

WHEREFORE, Plaintiff, Sally Jordan, respectfully requests the Court enter an Order denying Defendant's *Daubert* Motion Striking Plaintiff's Expert Randall Jaques as an expert.

Dated this 27th of June, 2018.

Respectfully Submitted,

*/s Peter M. Commette, Esq.*
Peter M. Commette, P.A.
Peter M. Commette, Esq.
1323 SE 3rd Avenue
Fort Lauderdale, FL 33316
Phone: 954-764-0005
Fax: 954-764-1478
Email: PMC@commettelaw.com

Secondary Email: pmcommette@aol.com
Secondary  Email:  Paralegal1@commettelaw.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on **June 27, 2018**, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those

8

counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:      *s/Peter M. Commette*
         PETER M. COMMETTE, ESQ.
         FBN#: 350133


**SERVICE LIST**
Case No. 17-CV-20773-KMW

Peter M. Commette, P.A.
Peter M. Commette, Esq.
1323 Southeast 3rd Avenue
Fort Lauderdale, Florida 33316
Tel.: 954-764-0005
Fax: 954-764-1478
Primary Email: PMC@commettelaw.com
Secondary Email: PMCommette@aol.com
Secondary Email: Paralegal1@commettelaw.com
*Attorney for Plaintiff*

Celebrity Cruises Inc.
Bryan Probst, Esq.
1050 Caribbean Way
Miami, FL 33132
Phone: 305-982-2956
Fax: 305-539-6561
bprobst@rccl.com
phehir@rccl.com
*Attorneys for Defendant*

Foreman Friedman, P.A.
Darren W. Friedman, Esq.
Rachel M. Fagenson, Esq.
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, Florida 33131
Phone: 305-358-6555
Fax: 305-374-9077
DFriedman@fflegal.com
rmitchell@fflegal.com
*Attorneys for the Defendant*